UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>ALEX WILLIAM ARRINGTON,<br><br>　　　Defendant. | Case No. 1:25-cr-00007-BLW<br><br>**SUPPLEMENTAL MEMORANDUM** |

On October 16, 2025, the Court sentenced Alex William Arrington to 42 months in prison followed by three years of supervised release for unlawful possession of a firearm. The Court now issues this Supplemental Memorandum to further explain the reasons for that sentence.

Mr. Arrington's charges stem from what law enforcement described as a hostage situation at an apartment in Caldwell involving members of the Rock Machine motorcycle gang, of which Mr. Arrington was President. Mr. Arrington and Christian Olvera-Espinoza, Rock Machine's Vice President, allegedly kidnapped and tortured C.P., a probationary member of the gang, for ten days. Mr. Arrington has vigorously disputed this characterization of the events, and he was ultimately charged only for unlawful possession of a firearm.

1. **Objections to the Presentence Investigation Report**

Both parties filed objections to the Presentence Investigation Report (PSR). *See* Dkt. 35-1. The Court's rulings on each were explained at sentencing and are set out in more detail below.

Base Offense Level: The Government objected to the base offense level of 14. According to the Government, the base offense level should be 20, pursuant to § 2K2.1(a)(4)(A), because Mr. Arrington has a prior conviction for a crime of violence. Mr. Arrington was convicted of assault with a deadly weapon under California Penal Code § 245(a)(1), and the parties' briefing initially focused on whether this constitutes a crime of violence. The Ninth Circuit is considering the question *en banc*, leaving it currently in flux. *See United States v. Gomez*, 133 F.4th 1083 (9th Cir. 2025). But regardless of the outcome at the circuit, Mr. Arrington did not receive any criminal history points for his § 245(a)(1) conviction. *See* Dkt. 35 ¶ 41. Under the Sentencing Guidelines, the "crime of violence" provision at § 2K2.1(a)(4)(A) considers "only those felony convictions that receive criminal history points." U.S.S.G. § 2K2.1, cmt. n.10. Consequently, § 2K2.1(a)(4)(A) does not apply, and Mr. Arrington's base offense level was correctly calculated at 14 pursuant to § 2K2.1(a)(6). Therefore, the Court overruled the Government's objection.

Enhancement for Possession of Three or More Firearms: Mr. Arrington

objected to the two-level enhancement for possession of three or more firearms under § 2K2.1(b)(1)(A). Law enforcement officers found one firearm—the weapon charged—in Mr. Arrington's motorcycle. They located three other firearms in the bedroom where Mr. Arrington stayed. Dkt. 35 ¶¶ 11-12. Mr. Arrington argued that insufficient evidence links him to those three firearms because there was no documentation of his ownership, multiple people used that bedroom, and the apartment was not his formal address.

The enhancement under § 2K2.1(b)(1) considers "only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." U.S.S.G. § 2K2.1, cmt. n.5. Thus, the Government had to show by a preponderance of the evidence that Mr. Arrington constructively possessed at least two of the three firearms found in the bedroom. Constructive possession requires "a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the firearms." *United States v. Carrasco,* 257 F.3d 1045, 1049 (9th Cir. 2001). "Mere proximity to contraband and mere association with a person controlling the contraband are each insufficient to show constructive possession." *United States v. Nungaray*, 697 F.3d 1114, 1117 (9th Cir. 2012).

Several pieces of evidence link Mr. Arrington to the bedroom, which in turn suggests that he exercised dominion and control over the firearms. Items found in

the bedroom include (a) a bill of sale for the firearm that he pleaded guilty to possessing, (b) a motorcycle registration with his name, and (c) a sweatshirt with the logo of his motorcycle gang and "President" embroidered on it. *See* Govt. Ex. 6-8, 13. Additionally, a neighbor said that Mr. Arrington had lived in the apartment since February 2024; an FBI informant identified the apartment as Mr. Arrington's residence; and Mr. Arrington himself referred to the unit as "his apartment." *See* Govt. Ex. 5-6.

On the other hand, Mr. Arrington's license listed a different address, and multiple people had access to the bedroom. Mr. Arrington also pointed out that C.P. admitted to owning at least two of the guns found at the bedroom. But, according to the police report, C.P. also indicated that the guns were stolen from him during the incident by Mr. Olvera, who was operating at Mr. Arrington's direction. *See* Govt. Ex. 6 at 15-16. That the guns were taken from C.P. further indicates that Mr. Arrington was directly or indirectly exercising dominion and control over them.

Although the issue was somewhat close, a preponderance of the evidence shows that Mr. Arrington constructively possessed the three firearms found in the bedroom. For this reason, Mr. Arrington's objection was overruled.

<u>Enhancement for Possessing a Firearm in Connection with Another Felony</u>:

Finally, Mr. Arrington objected to the four-level enhancement for possessing

a firearm in connection with another felony offense pursuant to § 2K2.1(b)(6)(B). The parties' briefing initially focused on whether Mr. Arrington did in fact commit another felony offense. The Government then submitted a video of Mr. Arrington beating C.P., which appeared to settle the question.

The issue, however, is more complicated because of the absence of any relationship between the firearm charged in the offense of conviction—the gun found in Mr. Arrington's motorcycle—and Mr. Arrington's assault of C.P. As mentioned above, Mr. Arrington took additional firearms from C.P. at some point during the incident, so those were arguably connected to his separate felony offense. The problem is, none of that has anything to do with the charged firearm, which was apparently in Mr. Arrington's motorcycle the entire time. Under § 2K2.1(b)(6)(B), the firearm that facilitated the separate offense does not have to be the same firearm charged in the offense of conviction, but there still must be some connection between the charged weapon and the other felony. "When . . . the firearm facilitating the separate felony offense was not cited in the offense of conviction, 'the threshold question for the court is whether the two . . . offenses were part of the same course of conduct or common scheme or plan.'" *United States v. Parlor*, 2 F.4th 807, 815 (9th Cir. 2021) (citing U.S.S.G. § 2K2.1 cmt. n.14(E)(ii)). Here, the firearms in the bedroom bore no connection to the firearm in Mr. Arrington's motorcycle. Due to the absence of any common scheme or plan,

Mr. Arrington's objection was sustained.

### 2. Above-Guidelines Sentence

Resolving the above objections left Mr. Arrington with an offense level of 13, a criminal history category of III, and a guidelines range of 18 to 24 months. But the Sentencing Guidelines are only a starting point when determining the appropriate sentence. A district judge may impose a sentence outside of the Guidelines range through either a departure or a variance. *United States v. Cruz–Perez,* 567 F.3d 1142, 1146 (9th Cir. 2009). While a departure is calculated with reference to the Guidelines themselves, a variance "occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a)." *Id.*

Section § 3553(a) sets out several factors that the Court must utilize when fashioning a sentence. The first factor is "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). Other major sentencing considerations for the Court are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a)(2).

Here, the § 3553(a) factors established that a sentence of 42 months imprisonment is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. First, the sentence reflects the violence underlying Mr. Arrington's unlawful possession offense. Although many particulars of the incident are disputed, there is video evidence of Mr. Arrington repeatedly striking C.P. The footage is alarming, to say the least. Although the firearm charged in the present offense was not directly connected to the incident, such context matters when fashioning a just sentence.

More importantly, this violent context is a recurring pattern for Mr. Arrington. He has past convictions for robbery, resisting arrest, assault with a deadly weapon, animal cruelty, battery against a spouse, and obstructing a peace officer. Dkt. 35 ¶¶ 35, 37, 40-45. Some of these offenses did not result in any criminal history points, but this history still provides meaningful information to the Court. The charge for obstructing a peace officer particularly stands out. *Id.* ¶¶ 43-45. At first brush the offense sounds relatively minor, but the PSR goes on to describe an incredibly disturbing sexual offense, and one with parallels to the situation here. The victim there claimed that Mr. Arrington held her against her will, threatened her with a gun, headbutted her until she was bleeding, forced her to perform oral sex on two men, and raped her. Of course, Mr. Arrington was not convicted of kidnapping or sexual assault, and the Court does not draw firm

conclusions about what happened. But what is undeniable is that Mr. Arrington has a history of serious violence and poses a significant threat to the community.

Against this, as mitigating considerations, are Mr. Arrington's childhood adversity and his efforts to provide a more stable home for his own family. He was abused by his mother and other individuals, placed in foster care, and spent stretches of his adolescence essentially homeless. He has five biological children and two stepchildren, and by all accounts he has been a loving father to them.

On balance, the totality of the circumstances of Mr. Arrington's present offense and the violence that punctuates his criminal history necessitated an above-guidelines sentence. In light of the nature of the offense and Mr. Arrington's background and prior criminal record, 42 months of incarceration is sufficient, but not greater than necessary, to achieve a just sentence, deter Mr. Arrington from future criminal acts generally, deter him from future violent criminal acts specifically, and protect the public from Mr. Arrington's criminal behavior. In the Court's view, any lesser sentence will not achieve those sentencing objectives.

DATED: November 3, 2025

B. Lynn Winmill
U.S. District Court Judge